UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| STANLEY V. WILLIS, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 3:17-CV-198 JD |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Stanley Willis was in a car accident, after which he began experiencing a number of serious health conditions that caused severe pain and cognitive disorders. He applied for social security disability benefits, claiming that he was no longer able to work, but the Commissioner denied his application. Mr. Willis filed this action seeking review of that decision. For the following reasons, the Court reverses and remands this action for further proceedings.

## I. FACTUAL BACKGROUND

In September 2012, Mr. Willis was in the passenger seat of a vehicle that was hit on the passenger side. He was not hospitalized immediately after the accident, but shortly thereafter he began experiencing pain in his neck, back, arms, and legs. He began seeking treatment, and was eventually diagnosed with degenerative disc disease with radiculopathy, epicondylitis (tennis elbow) in his right arm, and carpal tunnel syndrome in both arms, for which he underwent surgery. His doctors also told him that he needed surgeries on his back and his elbow, but Mr. Willis was unable to afford that. (R. 568, 579, 592). According to Mr. Willis, those conditions caused constant, severe pain and also resulted in numbness, particularly in his right arm and leg. In addition to his physical symptoms, Mr. Willis experienced cognitive impairments, which his

doctors suggested may have been caused by a traumatic brain injury in the accident. That caused Mr. Willis to experience difficulty with his memory and with concentration. He also stated that he experienced chronic headaches, which became worse when reading or concentrating.

Mr. Willis applied for social security disability benefits, claiming that he became disabled at the time of the accident. The ALJ found that Mr. Willis had multiple severe impairments, including degenerative disc disease with radiculopathy, epicondylitis, carpal tunnel syndrome, and acquired cognitive dysfunction. However, the ALJ found that Mr. Willis would still be able to perform sedentary work, subject to a number of physical and mental limitations. Based on testimony from a vocational expert, the ALJ concluded that a person with that residual functional capacity would still be able to perform the job of "call out operator," which the ALJ found existed in significant numbers. Therefore, the ALJ found that Mr. Willis was not disabled and denied his claim. The Appeals Council denied review, so Mr. Willis filed this action, asking that the Commissioner's decision be reversed and remanded for further proceedings.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

    2.        Whether the claimant has a medically severe impairment;

    3.        Whether the claimant's impairment meets or equals one listed in the regulations;

    4.        Whether the claimant can still perform relevant past work; and

    5.        Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Mr. Willis offers multiple arguments in support of reversal. He first argues that the ALJ erred in discounting the credibility of his subjective complaints. He next argues that the ALJ erred in giving limited weight to opinion evidence from various sources, including opinions from his treating physician about his inability to work. He also argues that the ALJ failed to account for limitations in concentration, persistence, and pace in his residual functional capacity. Finally,

he argues that the ALJ's finding at step five as to the number of positions available for a person with his residual functional capacity is not supported by substantial evidence.

As explained below, the Court agrees with Mr. Willis' first argument and finds that the ALJ's credibility analysis was not supported by substantial evidence. Because that could affect the weight the ALJ places on the various opinions (which the ALJ discounted in part because the sources relied on Mr. Willis' subjective complaints), which could in turn affect the residual functional capacity analysis, the Court does not address the remaining arguments, but leaves those to the parties to address on remand.

Mr. Willis testified that he suffers from severe pain that is chronic and is aggravated with any activity. He testified that the pain is so severe and intrusive that his whole day is based on pain management. In addition, he stated that he suffers from headaches, which are worsened by reading or concentrating and often intensify as the day goes on. He also stated that he experiences severe disorientation, particularly in the mornings and when taking medication, along with short-term memory problems and difficulty with concentration. The ALJ found that Mr. Willis' conditions could reasonably be expected to cause some pain and mental difficulties, but that his symptoms and limitations were not as serious as Mr. Willis alleged.

Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's decision must, however, provide "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the

reasons for that weight." SSR 96–7p,[1] 1996 WL 374186, at *2; *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013)). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Pepper*, 712 F.3d at 367; *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). An ALJ also may not ignore evidence. *Myles*, 582 F.3d at 676.

Here, the ALJ's credibility analysis was flawed in multiple respects. First, the ALJ appears to have relied heavily on Mr. Willis' activities of daily living in discounting his statements. After recounting Mr. Willis' testimony about his activities, the ALJ noted that they were "somewhat limited," but that "some of the physical and mental abilities and social interactions required in order to perform the activities reported are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition." (R. 20). The Seventh Circuit has warned against relying on daily activities in that manner. In fact, it has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) ("[I]t is proper for the Social Security Administration to consider a claimant's daily activities in judging disability, but we have urged caution in equating these activities with the challenges of daily employment in a competitive environment . . . ."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office.").

---

[1] This social security ruling was revised after the ALJ issued his decision. The parties dispute whether the revised ruling applies retroactively, but the Court need not resolve that argument, as the revisions were largely semantic and would not affect the outcome here.

The ALJ appears to have committed that error here, reasoning that Mr. Willis' limited daily activities show that he has the ability to work full time and are inconsistent with having a disabling condition. The only example of such a supposed contradiction that the ALJ offered was that Mr. Willis had planned on going to taxidermy school for two months, which the ALJ concluded "indicates that his alleged upper extremity symptoms and limitations may have been overstated." (R. 20). However, the record does not reflect what the taxidermy school entailed, or what physical or mental demands it required. Nor is there any indication as to whether Mr. Willis was able to successfully manage those demands.[2] Thus, the ALJ had no basis to conclude that this demonstrated an ability to work or contradicted Mr. Willis' statements. *See Czarnecki*, 595 F. App'x at 644 (holding that an ALJ erred in finding activity contradicted the claimant's allegations, as the record contained no information about what the activity actually entailed). Moreover, other records indicate that Mr. Willis struggled when trying to engage in his hobby of taxidermy, which further undermines the ALJ's reliance on that factor. (R. 223 ("Fish taxidermy has become very difficult to do because of lack of motor skills and strength, but I continue to try for the purpose of activity . . . ."); *see also* 53, 548).

In addition, an ALJ must consider not only what the claimant does, but also how the claimant goes about performing those activities and what effect the activities have on the claimant. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008); *Czarnecki v. Colvin*, 595 F. App'x 635, 644 (7th Cir. 2015). The ALJ did not do so, thus overstating Mr. Willis' already-limited activities. The ALJ stated that Mr. Willis "feeds chickens, does the laundry, and is able to drive up to 25 miles roundtrip, go shopping for hobby supplies, manage his money, engage in his

---

[2] Mr. Willis' attorney speculates that Mr. Willis might not have even attended the school, as the next office visit was less than two months later.

hobbies of fish taxidermy and animal care, and play computer games." (R. 19–20). However, the ALJ failed to acknowledge various limitations or accommodations that allowed Mr. Willis to perform those activities. Though Mr. Willis did feed his chickens, he did so only with the assistance of his wife. (R. 220, 228). He also helped with the laundry, but "on a limited basis," and he needed reminders to move the laundry from the washer to the dryer. (R. 229). As for shopping for hobby supplies, Mr. Willis did not "go shopping," but rather ordered supplies online, a task that would take five to ten minutes. (R. 222). Though he was able to manage his money, Mr. Willis stated that he had to double check and re-check his transactions due to his inability to concentrate. (R. 223, 231). And though Mr. Willis attempted to continue engaging in taxidermy, as just noted, he struggled in doing so. In failing to acknowledge any of those qualifications, the ALJ "adopted an impermissible 'sound-bite' approach to evaluating the record." *Czarnecki*, 595 F. App'x at 644 (quoting *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014)); *see Craft*, 539 F.3d at 680.

Another reason the ALJ gave for discounting Mr. Willis' statements was that he "has not required hospitalizations or emergent treatment." (R. 20). The Seventh Circuit has criticized that same logic: "[W]e do not understand the Commissioner's point; a person suffering continuous pain might seek unscheduled treatment if that pain unpredictably spikes to a level which is intolerable, but otherwise why would an emergency-room visit be sensible? Unless emergency treatment can be expected to result in *relief,* unscheduled treatment in fact makes no sense." *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013). That reasoning applies particularly to a person like Mr. Willis who has a difficulty affording even necessary treatment for his condition. (R. 58–59, 380, 579). The ALJ's opinion suggests that the lack of emergency room visits contradicts Mr. Willis' reported falling episodes, but Mr. Willis did not allege suffering an injury

in a fall, (R. 583 "(He has had two falls to the ground without injury secondary to not being able to have adequate feeling in his right lower extremity."), and there is no other reason to believe that his conditions would have resulted in hospitalizations or emergency room visits.

Next, the ALJ stated that Mr. Willis "did not stop working due to his medical conditions, but because he was laid off when his company closed."[3] (R. 20). That is an incomplete characterization of Mr. Willis' testimony, though. What Mr. Willis testified to was that, once he had his accident, his employer kept him on only as a courtesy and for a short time, as the facility was already about to close. (R. 46 ("And after the accident, they were going to let me go then but I actually asked them to stay because I needed the money because of the issues with my truck and the accident. . . . So they allowed me to stay.")). His work during that time consisted mostly of sitting in the maintenance office. (R. 47). The Seventh Circuit has noted in those very circumstances that the fact that an individual may still have a job is not inconsistent with them nonetheless being disabled: "the fact that a person holds down a job doesn't prove that he isn't disabled, because he may have a careless or indulgent employer or be working beyond his capacity out of desperation." *Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003); *accord. Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."). Yet the ALJ here failed to acknowledge this evidence that Mr. Willis only maintained his job (for a short time) because of his indulgent employer.

---

[3] The ALJ also stated that Mr. Willis "subsequently pursued taxidermy," (R. 20), but also already discussed, Mr. Willis struggled in attempting to engage in taxidermy, and it was a hobby, not a profession.

The ALJ also stated that Mr. Willis' symptoms and limitations were "greater than expected in light of the objective evidence of record." (R. 20). The ALJ did not identify any specific objective evidence that contradicted Mr. Willis' statements, though. Instead, the decision refers generally to the discussion of the medical evidence, making it hard to trace the ALJ's reasoning in that regard. In addition, the Seventh Circuit has held that an "ALJ may not discount a claimant's credibility just because [his] claims of pain are unsupported by significant physical and diagnostic examination results." *Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014) (collecting sources); *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) ("[O]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence."). Thus, this factor alone would not suffice to support the ALJ's credibility finding.

For each of those reasons, the Court cannot conclude that the ALJ's decision to discount Mr. Willis' statements was supported by substantial evidence. That error is not harmless. If, on remand, the ALJ decides to give greater weight to Mr. Willis' subjective complaints and limitations, that could result in a more restrictive residual functional capacity finding. In addition, the ALJ discounted the opinions of various doctors and other sources on the basis that the opinions relied on Mr. Willis' subjective reports, so the ALJ's credibility analysis could affect the ALJ's assessment of that evidence as well. Accordingly, the Court remands this action to the Commissioner for further proceedings.

## IV. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: August 8, 2018

                                              /s/ JON E. DEGUILIO
                                       Judge
                                       United States District Court